254 So.2d 562 (1971)
In re ESTATE of Mary Merwin SWEET, Deceased.
Harry M. SWEET, Appellant,
v.
FIRST NATIONAL BANK OF CLEARWATER, As Executor under the Will of Mary Merwin Sweet, Deceased, et al., Appellees.
No. 70-612.
District Court of Appeal of Florida, Second District.
November 17, 1971.
Jack F. White, Jr., Clearwater, for appellant.
Wolfe, Bonner & Hogan, Clearwater, for appellees.
LILES, Judge.
Mary Merwin Sweet agreed to sell her condominium apartment for cash. She and the buyer executed a customary contract and the buyer deposited earnest money with the broker. The contract was enforceable by either party. A week or two before the scheduled closing date, she was killed in an automobile accident. The buyer insisted that the contract be performed, *563 and Mrs. Sweet's executor, with probate court approval, consummated the sale. The question is who gets the sale proceeds.
Mary Merwin Sweet died testate. She had executed her will before she made the contract to sell. At the time of her death she owned real property apart from the particular property now in question. She devised to her son "* * * all of the real property of which I may die seized or possessed or to which I may be entitled at the time of my death." In her will, she identified no specific real property. Her residuary bequest was to a testamentary trustee. The trust is for the benefit of her son and grandchildren, with a remainder gift to a college as to part of the trust assets.
Appellant points out that his mother still held legal title to and possession of the property when she died, and therefore he asserts that the property, though subject to the sale contract, came under the devise, and he as devisee is entitled to the sale proceeds. The probate court thought otherwise, and the son appeals. We affirm.
Appellant denies applicability of the doctrine of ademption. Under this doctrine, if a testator by his will purports to give a specific object or right, which is not found in the testator's estate at the time of his death, the legatee receives nothing. Appellant asserts inapplicability on the ground that the doctrine applies only to specific legacies or devises and that the devise to him was not specific  i.e., an object or right distinct from all others  but was general  i.e., part of a class of completely interchangeable items, designated by quantity or amount, and payable from general assets of the estate.
We find it unnecessary to classify the devise as specific or general or to determine whether the doctrine of ademption applies.
If the devise was specific, then the testator's sale of the property worked an ademption, even though the testator died before conveying the legal title and receiving all of the purchase money, at least in the absence of a showing that the testator intended otherwise, a showing not made here. Eisenschenk v. Fowler, Fla. 1955, 82 So.2d 876. Some states have by statute changed this result with respect to property specifically devised or bequeathed, but Florida has not yet done so, and we do not feel at liberty to do so judicially. See Annot., 62 A.L.R.2d 958 (1958).
If the devise was not specific, as appellant contends, he still cannot claim the property unless the particular property was all or part of the testator's real property at the time of her death. But the equitable conversion doctrine is well established in Florida; when an owner makes a specifically enforceable contract to sell his real property, the vendee becomes the beneficial owner and the vendor retains only naked legal title in trust for the vendee and as security for the vendee's performance. Hull v. Maryland Casualty Co., Fla. 1954, 79 So.2d 517; Tingle v. Hornsby, Fla. App. 1959, 111 So.2d 274; 12 Fla.Jur. Equitable Conversion § 6 (1957). Under this doctrine the vendor's interest is considered personalty and passes accordingly upon the vendor's death, at least in the absence of a showing of contrary intent. See 27 Am. Jur. Equitable Conversion § 11 (1966); 3 American Law of Property § 11.26 (Casner ed. 1952).
The testator contracted to sell the property before her death, and the contract was enforceable against her and binding upon her heirs, devisees, and personal representatives. Upon consummation of the sale, she may have increased her son's testamentary gifts or may have conferred other benefits upon him; we have little ground for speculation. One thing is clear: she intended to convert a particular item of her real property into money, and she expressed no intention that her son should have any money outright. Had she managed to close the sale and collect the purchase money the day before she died, *564 the devise to her son would not have carried with it the sale proceeds. In the absence of a controlling statute, we find no substantial reason why it should do so when the closing was interrupted by her accidental death and her contract obligation had to be discharged by her personal representative.
Affirmed.
PIERCE, C.J., and MANN, J., concur.