S11A0043. MELICAN v. PARKER et al.
(711 SE2d 628)

MELTON, Justice

Harvey Strother, who was domiciled in Georgia, bequeathed a Florida condominium to his long time mistress, Anne Melican.[1] Prior to his death, however, Strother entered a contract to sell the condominium. Although Strother died before the closing date for the sale of the condominium, the condominium was nevertheless eventually sold pursuant to the agreement that Strother had entered before he died. When Melican filed an action in the Probate Court of Cobb County, Georgia, to collect the proceeds from the sale of the condominium, A. Sidney Parker, executor and trustee of the testamentary marital trust, and David Strother, Jr., the deceased's grandson and beneficiary under the Will (hereinafter collectively "Parker"), filed a response as caveators to the Will.[2] Parker claimed

---

[1] This appeal concerns the Second Codicil to Strother's Will, which bequeaths the Florida condominium to Melican. In a prior appeal, this Court found a prior codicil to Strother's Will (the "First Codicil") to be invalid, and also upheld a jury verdict that had found a later codicil to the Will (the "Third Codicil") to be invalid. See *Parker v. Melican*, 286 Ga. 185 (684 SE2d 654) (2009). This Court upheld the validity of the Second Codicil. Id. The First and Third Codicils are not at issue in the present appeal.

[2] In another appeal involving these same parties, this Court held that Mr. Parker, in his capacity as Trustee of the Marital Trust, had standing to challenge the three codicils to Strother's Will. See *Melican v. Parker*, 283 Ga. 253 (657 SE2d 234) (2008).

that the bequest of the real property in question had been adeemed[3] based on the sale, and that Melican therefore was not entitled to the proceeds from the sale. The probate court agreed with Parker, prompting Melican to appeal. As explained more fully below, because Florida's nonademption statute directly controls in this situation, and because the nonademption statute makes clear that a specific devisee of real property is entitled to collect any balance owed to a testator from the purchase of the real property in question at the time of the testator's death, the probate court erred in concluding that Melican was not entitled to the proceeds from the sale of the Florida condominium. Accordingly, we reverse.

As the parties correctly concede, in Georgia, "[a] devise of real property will always be construed, as far as the effect of the will is concerned, in accordance with . . . the law of the place where the land is situated." (Citation and punctuation omitted.) *Veach v. Veach*, 205 Ga. 185, 190 (1) (53 SE2d 98) (1949). Because there is no dispute that the Second Codicil at issue here contains a devise of real property located in Florida, the devise of this property is subject to Florida law. See id.

Pursuant to Fla. Stat. § 732.606 (2) (a) (the "nonademption statute"), "[a] specific devisee has the right to the remaining specifically devised property and . . . [a]ny balance of the purchase price owing from a purchaser to the testator at death because of sale of the property." Therefore, where, as here, a balance is owed to a testator from the sale of his or her real property located in Florida, the proceeds from this sale are due to the specific devisee who would have otherwise inherited the real property under the will. Id. See also *Ott v. Ott*, 418 So2d 460, 462 (Fla. App. 1982) ("The original intent of the [nonademption statute] . . . was to prevent ademption in *all* cases involving sale . . . of specifically devised assets when the testator's death occurred before the proceeds of the sale . . . had been paid to the testator") (citation and punctuation omitted; emphasis supplied). Accordingly, Melican, as the specific devisee of the Florida condominium under Strother's Will, was entitled to the proceeds from the sale of the condominium after Strother's death, as these proceeds had not yet been paid to Strother before he died. Fla. Stat. § 732.606 (2) (a).

In order to suggest that a contrary result must be reached here, Parker and the dissent erroneously rely on Florida case law that has been specifically overruled by Florida's nonademption statute. Com-

---

[3] In general, "a specific testamentary gift is adeemed or destroyed, wholly or in part, when the testator for any reason does not own the subject of such gift at death." OCGA § 53-4-66.

pare *In re Estate of Sweet v. First Nat. Bank of Clearwater*, 254 So2d 562, 563 (Fla. App. 1971) (where testator died before closing date to sell condominium, doctrine of ademption applied to destroy devise of condominium after it was ultimately sold following testator's death, and proceeds from sale of condominium therefore went to estate rather than devisee of the real property) with *Dobson v. Lawson*, 370 So2d 1238, 1240 (Fla. Ct. App. 1979) (Pursuant to Florida's non-ademption statute, "[i]f there is any balance of the purchase price remaining at the testator's death from the sale of the specifically devised property, *the specific devisee is entitled thereto together with any security interest . . . . This statutory provision supersedes the decision in Estate of Sweet*, (1971 Fla. App.) 254 So.2d 562") (citation and punctuation omitted; emphasis supplied) and *Owen v. Wilson*, 399 So2d 498, 500 (Fla. App. 1981) ("Since section 732.606 was adopted as modified from the Uniform Probate Code, we find that the Legislature wanted Florida's law to be similar to the laws of our sister states adopting this provision rather than prior Florida case law"). Parker and the dissent cannot use the very case law that the nonademption statute has specifically overruled to support their claim that the nonademption statute somehow does not apply in this case.

In order to reach its intended result, the dissent directly relies on the inapplicable doctrine of equitable conversion. Specifically,

> the equitable conversion doctrine is well established in Florida; when an owner makes a specifically enforceable contract to sell his real property, the vendee becomes the beneficial owner and the vendor retains only naked legal title in trust for the vendee and as security for the vendee's performance. [Cits.] Under this doctrine the vendor's interest is considered personalty and passes accordingly upon the vendor's death.

*Estate of Sweet*, supra, 254 So2d at 563. In *Estate of Sweet*, a testator agreed to sell her Florida condominium and entered into a sales contract to that effect. However, before the scheduled closing date, the testator was killed in a car accident. At the time of her death, the testator had a will in which she bequeathed to her son "all of the real property of which I may die seized or possessed or to which I may be entitled at the time of my death." The Florida appeals court held that, because the testator had converted "her real property into money, and she expressed no intention that her son should have any money outright[,] . . . the devise to her son would not have carried with it the sale proceeds . . . *[i]n the absence of a controlling statute*." Id. at 563-564. In other words, in the absence of a controlling statute

to the contrary, the real property had been adeemed and the intended beneficiary of the real property was not entitled to collect the proceeds from the sale of the property.

The dissent ignores the fact that, since the decision in *Estate of Sweet*, a "controlling statute" has been passed by the Florida Legislature that makes clear that the doctrine of equitable conversion no longer applies to affect the rights of a specific devisee of property under a will when the property in question is under contract to be sold and the vendor dies before collecting the proceeds from the sale. Fla. Stat. § 732.606 (2) (a). See also *Dobson*, supra, 370 So2d 1238. Indeed, Florida's nonademption statute prevents the ademption of real property that is the subject of a specific devise when such property is under contract to be sold at the time of a testator's death, and "[t]his statutory provision supersedes the decision in *Estate of Sweet*, (1971 Fla. App.) 254 So.2d 562." *Dobson*, supra, 370 So2d at 1240. Thus, contrary to the dissent's conclusion that *Estate of Sweet* would somehow be applicable here because it has been superseded on other grounds, a straightforward analysis of the case shows that it has been overruled on the specific grounds that are directly applicable to this case. *Dobson*, supra, 370 So2d at 1240. Whether or not the Florida property in question has been adeemed is the only issue relevant to whether or not Melican can collect the proceeds from the sale of the Florida condominium, and the dissent's attempt to characterize the issue as something else represents a misreading of the case.

The language in Strother's will does not change the result. Again, the only reason that the property owner in *Estate of Sweet* was deemed to no longer be the owner of the real property that she attempted to convey to her son at the time of her death was because the doctrine. of equitable conversion applied in the absence of a controlling statute that would have allowed for the son to collect the proceeds from the sale of the property. Here, there is a controlling statute that allows for Melican to collect the proceeds from the sale, and the doctrine of equitable conversion cannot apply to change that result. Fla. Stat. § 732.606 (2) (a); *Dobson*, supra. See also *In re Estate of Skuro*, 467 So2d 1098, 1101 (Fla. App. 1985) (Rights conferred by statute take precedence over doctrine of equitable conversion, as statutes represent "the voice of that society's surrogates . . . [and] [e]quitable conversion is not the collective voice of Floridians exercising their rights by way of the ballot") (Glickstein, J., concurring specially). As a matter of law, the equitable conversion doctrine does not apply to affect Melican's rights here, and the dissent can point to nothing in Strother's will or the sales contract for the Florida condominium to support the conclusion that Strother somehow intended for the doctrine to apply. To the contrary, the

plain language of the contract for the sale of the Florida condominium indicates that Strother intended to be the owner of the Florida property at the time of his death prior to the closing. The sales contract specifically states that

> BUYER shall be the legal owner of the Property *as of the closing,* and [Strother] shall vacate and give possession of the Property at the closing. . . .

(Emphasis supplied.) Thus, even if we assume that a condition of ownership existed in Strother's will at the time of his death, the parties to the sales contract specifically agreed that Strother would remain the owner of the Florida property until the actual closing date, which would have fulfilled any such condition in light of the inapplicability of the equitable conversion doctrine. The language in Strother's will does not suggest otherwise. See *Morgan v. Cornell,* 939 So2d 344 (Fla. App. 2006) ("If I own the home" language in will did not limit the *type* of ownership that testator was required to have in order to pass real estate interest to intended beneficiary). Here, if any unfulfilled condition existed, it was with respect to the *buyer's* legal ownership of the property being contingent upon the closing date, not any condition created by the sales contract or Strother's will that would have shown his intent to lose ownership of the property through equitable conversion at the time that he entered into the sales contract.

As further evidence that the dissent has misapplied the doctrine of equitable conversion, all of the Florida cases cited by the dissent "merely apply the [equitable conversion] doctrine as between the vendor and the vendee" (*Estate of Skuro,* supra, 467 So2d at 1099, *Demosthenes v. Girard,* 955 So2d 1189 (Fla. App. 2007)) or are otherwise distinguishable from the present case. See *Metropolitan Dade County v. Brothers of the Good Shepherd,* 714 So2d 573 (Fla. App. 1998) (long term *lessee* was not the "equitable owner" of property such that it could obtain tax exempt status). The cases do not apply the doctrine to a situation such as the one presented here, because the Florida Legislature has determined that the doctrine simply does not apply to prevent a specific devisee from collecting the proceeds from the sale of the property that was the subject of the devise. *Dobson,* supra.

Tellingly, the dissent does not cite to *Dobson,* supra, the Florida case that directly controls in this situation and makes clear that the dissent is incorrect in its contentions that *Estate of Sweet* has any application in this case and that the language in Strother's will would prevent the application of Florida's nonademption statute. In *Dobson,* a testator devised in his will all of the stock that he "owned"

in a company to the appellant. However, prior to his death, the testator sold *all* of the shares that he owned in the company to the appellant — thus leaving the testator with no ownership of the stock that was the subject of the devise. The appellant executed a promissory note and security agreement to pay for the shares, but, prior to paying the remaining balance on the note to the testator, the testator died. The testator's estate successfully argued in the trial court that the devise of the stock had been adeemed, and that, therefore, the appellant was not entitled to cancel the promissory note and security deed as satisfaction of the devise contained in the will. The Florida appellate court reversed, holding that Florida's nonademption statute applied, and that when "there is *any* balance of the purchase price remaining at the testator's death from the sale of the specifically devised property, the *specific devisee* is entitled thereto together with any security interest." (Citation and punctuation omitted; emphasis supplied.) Id. at 1240. As noted previously, the court went on to specifically state that Florida's nonademption statute "supersedes the decision in *Estate of Sweet*, (1971 Fla. App.) 254 So.2d 562." Thus, even where a testator no longer has ownership of the property that is the subject of a specific devise, where, as here, there is an outstanding balance that remains to be paid to the testator on the property, the nonademption statute applies to ensure that the specific devisee receives the proceeds from the sale. This is the case regardless of whether or not the language in the will states that the testator is only conveying that which he "owns." Id.

Again, the only way that the dissent can conclude otherwise is to apply the doctrine of equitable conversion to a situation in which the Florida Legislature and Florida case law have specifically forbidden its application. Such application of inapplicable law only underscores the dissent's attempt to apply Florida law as the dissent wishes it to be, rather than Florida law as it actually exists.

Accordingly, the judgment of the probate court is reversed.

*Judgment reversed. Hunstein, C. J., Nahmias, J., and Judge Tilman E. Self concur. Carley, P. J., Benham and Thompson, JJ., dissent. Hines, J., not participating.*

CARLEY, Presiding Justice, dissenting.

The majority mischaracterizes property devised through a will, resulting in the erroneous application of Florida law and causing a disposition that is contrary to the intent of the testator as clearly expressed in his will. As the ruling of the probate court should be affirmed, I respectfully dissent.

1. The provision at issue in the second codicil states in pertinent part:

> If I am still the owner of the Cozumel Condominium, Unit #806, located in Marco Island, Florida at the time of my death, not withstanding any provision in my Will to the contrary, that property shall pass to Anne Melican.

The key language in this provision is the phrase "[i]f I am still the owner . . . at the time of my death," which, under Florida law, creates a conditional specific devise. See *Morgan v. Cornell*, 939 S2d 344-345 (Fla. Dist. Ct. App. 2006). In *Morgan*, the will provision at issue contained similar conditional language as that quoted above, and the Florida court was asked to determine whether the testator owned the property subject to the specific devise at the time of his death. The Florida court determined that the testator did own the property at death and thus "the ownership condition was fulfilled; and [the specific] devise validly passed. . . ." *Morgan v. Cornell*, supra at 346. Therefore, the first issue to determine in the present case is whether the condition required for the specific devise to be activated was fulfilled, namely, whether the testator owned the Cozumel condominium at the time of his death, which requires us to look to Florida property law since that is where the land is situated. *Veach v. Veach*, 205 Ga. 185, 190 (1) (53 SE2d 98) (1949).

There is no dispute that the testator had entered into a valid sales contract for the sale of the condominium shortly before his death, although the closing had yet to take place. Florida courts have "long recognized that a contract to sell real property establishes the vendee 'as the beneficial owner of the property, with the vendor retaining only naked legal title in trust for the vendee.' [Cits.]" *Demosthenes v. Girard*, 955 S2d 1189, 1191 (Fla. Dist. Ct. App. 2007). In *Estate of Sweet v. First Nat. Bank of Clearwater*, 254 S2d 562, 563 (Fla. Dist. Ct. App. 1971), a testator devised to her son " 'all of the real property of which I may die seized or possessed or to which I may be entitled to at the time of my death.' " The issue before the Florida court was whether certain real property that was under a valid sales contract at the time of the testator's death would still be considered as "seized or possessed" by the testator so that the proceeds would go to her son. *Estate of Sweet v. First Nat. Bank of Clearwater*, supra. The Florida court determined that, due to the doctrine of equitable conversion, the real property subject to the sales contract was no longer part of the testator's real property at the time of her death and thus was not devised to her son pursuant to the will provision quoted above. *Estate of Sweet v. First Nat. Bank of Clearwater*, supra. Although the *Estate of Sweet* case has been superseded by statute on

the issue of ademption, it is still good law on the issue of ownership of real property that is subject to a sales contract. See *Demosthenes v. Girard,* supra; *Metropolitan Dade County v. Brothers of the Good Shepherd,* 714 S2d 573, 574 (Fla. Dist. Ct. App. 1998); *In re Estate of Skuro,* 467 S2d 1098, 1099 (Fla. Dist. Ct. App. 1985). Contrary to the majority's assertion, I am not applying *Estate of Sweet* and equitable conversion to prevent ademption in this case, but to ascertain the ownership of a property subject to a sales contract. The majority even acknowledges that Florida case law still relies on *Estate of Sweet* and equitable conversion to determine ownership issues " 'as between the vendor and the vendee.' " (Maj. Op. at 424)

Applying the law summarized above, when the testator in the present case placed the Cozumel condominium under a valid sales contract prior to his death, the beneficial ownership of the property was equitably converted to the purchaser under the sales contract. Therefore, at the time of the testator's death and pursuant to Florida law, the testator no longer owned the real property. Thus, the ownership condition was not fulfilled and the specific devise fails, which makes any ademption issue moot. See *Morgan v. Cornell,* supra (stating that if testator is not considered the owner of the real property at the time of his death, then "the [ownership] condition would fail and the testator's interest in the homes would become part of the residuary estate").

Moreover, by applying Fla. Stat. § 732.606 (2010) to prevent ademption in the present case, the majority is disregarding the testator's intent as expressed in his will, which is contrary to the legal principle embodied in Florida's probate code that

> [t]he intention of the testator as expressed in the will controls the legal effect of the testator's dispositions. The rules of construction[, including § 732.606] . . . shall apply *unless a contrary intention is indicated by the will.*" (Emphasis supplied.)

Fla. Stat. § 732.6005 (1) (2010). "If the testator's will expressly conditions the specific devise on owning the property at death, ademption cannot be avoided because ademption cannot be inconsistent with the testator's intent." Restatement (Third) of Property (Wills & Don. Trans.) § 5.2 cmt. h (1999). Therefore, by including the condition of ownership of the real property at the time of death, the testator clearly expressed his intent that Ms. Melican inherit only the actual real property and not any proceeds from the sale of such property. Contrary to the majority's assertion that the testator's intent is irrelevant, Florida law specifically provides that the testator's intent as expressed in his will takes precedence over any statute

that would effectuate a result contrary to this intent. Fla. Stat. § 732.6005 (1) (2010).

2. Even without the failure of the ownership condition as described above, the ruling of the probate court should be affirmed and the proceeds from the sale of the real property should not be distributed to Ms. Melican. Under Georgia law, if the item or interest contained in a will is real property, then the law of the situs of the property is to be applied. *Veach v. Veach*, supra. However, if the item or interest to be passed by a will is personal or moveable property, then the state of the testator's residency will govern its disposition. *Arrington v. Hosemann*, 224 Ga. 592, 593 (163 SE2d 722) (1968).

As described above, under Florida law, once real property is placed under a valid sales contract, pursuant to "the doctrine of equitable conversion, the vendor's interest thereupon becomes personalty. [Cits.]" *Tingle v. Hornsby*, 111 S2d 274, 276 (Fla. Dist. Ct. App. 1959). Therefore, at the time of the testator's death, which is the relevant time for purposes of characterizing items contained in a will, the testator's interest in the Cozumel condominium had already been converted to personal property. Thus, when the Georgia probate court began its enforcement of the dispositions in the will, the testator's interest in the Cozumel condominium was placed on his list of personal property, not his list of real property. Consequently, since the testator's interest in the Cozumel condominium at the time of his death was characterized as personal property, the Georgia probate court was obligated to apply the law of Georgia, as it is the state of the testator's residency. Only if the testator's interest in the Cozumel condominium was considered real property at the time of his death would we apply Florida law and thus its nonademption statute.

Pursuant to OCGA § 53-4-66, "a specific testamentary gift is adeemed or destroyed, wholly or in part, when the testator for any reason does not own the subject of such gift at death." Although OCGA § 53-4-67 specifies three exceptions to the ademption rule quoted above, none of these exceptions apply in the present case and Ms. Melican has not attempted to argue that any of them do apply. As explained above, since the property was subject to a valid sales contract, the testator did not own the Cozumel condominium at the time of his death. Therefore, under Georgia law, the specific devise of the condominium to Ms. Melican has been adeemed.

In summary, as expressed in Division 1 of this opinion, the testator, by including the phrase "[i]f I am still the owner of the Cozumel Condominium ... at the time of my death," placed an express condition on the specific devise to Ms. Melican. By placing the Cozumel condominium under a valid sales contract, the testator relinquished his ownership interest in the real property prior to his

death, thereby causing the express ownership condition of the devise to fail. Since the condition was not fulfilled, the specific devise to Ms. Melican was never triggered and thus any ademption issue is moot as it would arise only if there has been a valid devise. However, even if the above analysis is incorrect, the specific devise to Ms. Melican would be adeemed since the testator's interest in the Cozumel condominium at the time of his death was characterized as personal property, requiring the application of OCGA § 53-4-66. In any event, therefore, the ruling of the probate court is correct and should be affirmed.

I am authorized to state that Justice Benham and Justice Thompson join in this dissent.

DECIDED MAY 31, 2011 —
RECONSIDERATION DENIED JUNE 27, 2011.

*Troutman Sanders, Alison A. Grounds, Douglas D. Salyers, Wayne R. Vason, W. Allen Separk*, for appellant.
*Roy E. Barnes, Allison B. Salter, Dupree & Kimbrough, Hylton B. Dupree, Jr., Thomas H. Rogers III*, for appellee.